## ZIP MASSEY v. THE STATE.

1. CONFESSIONS made under arrest, though not voluntary or after warning, may be used in evidence to the extent that the accused made statement of facts and circumstances found to be true, and no further.   Only so much of the confession is admissible as was indicative of verified and inculpatory disclosures.

2. SAME.— The other evidence showing that the stolen money was taken from a certain drawer, and the accused on producing the money having stated that he got it from that drawer, this declaration was admissible though made under arrest and without warning.

3. EVIDENCE.— Declarations of the accused and of a third party as to the collection by the former of a sum of money some months before the theft, were properly excluded as evidence for the defense; those of the third party as hearsay, and as proof competent only to be made by him upon the stand.

4. PRACTICE — ORGANIZATION OF JURY.— Though the court erred in refusing to permit the accused to further test a juror after the latter had, by his own answers, raised a doubt of his qualification, it was not such error as requires a reversal of the judgment when it appears that the accused relieved himself of the obnoxious juror by peremptory challenge, and suffered no prejudice.

APPEAL from the District Court of Camp. Tried below before the Hon. B. T. ESTES.

The charge in the indictment was the theft from J. C. Lindsay, on April 24, 1880, of $25, in two ten and one five-dollar notes. The trial resulted in a verdict of guilty, and a term of two years in the penitentiary was the punishment assessed.

J. C. Lindsay testified, for the State, that the appellant was in his employ as a servant or laborer on the 24th day of April, 1880. A few days before the date named, the witness had placed his pocket-book, containing $95 in paper money, in a table drawer in a room in his house, in Camp county. This drawer was usually kept locked and the key on the mantel-piece, or hung up in the room, and to this room the appellant had free access. On the day stated, the witness took his pocket-book from the drawer and discovered that two ten and one five-dollar bills had been abstracted. The appellant had left the witness a day or two before, and the witness immediately suspected him. He procured a warrant for his arrest and was deputized to execute it. He found the appellant in Mr. Gregory's store in the town of La Fayette, Upshur county, and called him out. He followed the witness into Dr. Grammar's drug-store, and there the witness told him he had lost some money, and the appellant denied

having it. The witness then arrested the appellant, and the latter took two ten-dollar bills from his pocket and delivered them to the witness, and, in reply to the question of the witness, he stated that he got the money out of witness' table drawer. The witness was unable to say whether the bills abstracted from his drawer were Treasury or National Bank notes, but they were of a class in circulation and known to the witness as "greenback" bills. Two of the notes were of the value of ten dollars each, and one of the value of five dollars. The bills recovered from the appellant were similar in appearance to those taken from the defendant's drawer. He could not say that they were the same.

Cross-examined the witness stated that he had paid the appellant nothing for that month's service, when he left. At the time the money was lost, there were in witness' family his wife, sister-in-law, three children and a young white man, and there was also about the place another negro besides the appellant; all of whom had access to the room from which the money was taken. The witness was absent in his field during the day, but at the house at night. He thinks the drawer was locked after the money was put in it, and that the key was laid up or hung up in the room. The money was placed in the drawer on Tuesday and missed on the following Friday. On re-examination the witness said that, on being questioned, the appellant denied having applied to Dr. Grammar to change a ten-dollar bill.

George Danly testified, for the State, that near about the time of the arrest of the appellant he came to witness and gave him a five-dollar bill, asking him to get Ray Lindsay to change it, saying that he owed Mr. Lindsay $2.30, and if he asked change himself Lindsay would take that amount out of the bill. The witness got the bill changed as requested, and appellant gave him twenty-five cents of the change for his trouble.

Caleb Lindsay, a brother of the prosecuting witness, testified for the State that, about the time of the arrest of the appellant, he changed a five-dollar bill for George Danly, the last witness. The appellant did not owe the witness any sum of money.

Dr. Grammar testified, for the State, that on or about the day of the arrest of the appellant, he handed witness a ten-dollar bill in his drug store, asking change. The witness could not make the change and returned the bill. He was present when J. C. Lindsay arrested the appellant, and saw the latter, after his arrest, take two ten-dollar bills from his pocket and hand them to Mr. Lindsay. About the 25th day of December, 1879, the witness bought two loads of corn from the appellant, paying him therefor, at the rate of fifty or sixty cents a bushel, some eight or ten, or possibly as much as fourteen dollars. Since then he has bought nothing from, nor paid any money to, the appellant.

Jim Duncan testified, for the defense, that he was present when appellant was arrested by Mr. Lindsay. The latter told the witness to go to Gregory's store and bring the appellant to Grammar's drug store. He did so, and Lindsay arrested the appellant and charged him with theft of some money. The appellant denied the theft, and Lindsay ran his hand in his pocket as if to draw a pistol. Witness saw the appellant with money a month or two before, but could not say how much.

Tobe Swifford testified, for the defense, that he was present when appellant was arrested, and that Lindsay had a pistol in his hand when he made the arrest. A month or two before the arrest, the witness paid $20 to the appellant in money and an order on G. C. Hopkins. Of this, witness paid him $5 at the time, left $10 with Mr. Garrete for him, and gave him an order on Hopkins for $5, and subsequently saw the appellant with the money. The witness saw the appellant with money,—

he could not say how much,— about one month before Lindsay lost his. This money was in a pocket-book, folded. There may have been two bills, but the witness could not see their denomination.

G. C. Hopkins testified that, on an order from Tobe Swifford, he paid the defendant five dollars, but did not recollect whether he paid the order in money or in goods from his store. He saw the appellant sell his saddle and bridle for four or five dollars, a month or two before Lindsay lost his money.

Wm. Norman and Dick Wilson both testified to seeing appellant with greenback money about the time he left Joe Lindsay. Norman stated that this was some two or three months before Lindsay was said to have lost his money.

A. Teel testified that he knew the appellant's reputation for honesty, and that it was good.

No brief for the appellant.

*H. Chilton,* Assistant Attorney General, for the State.

WHITE, P. J. At the time the confessions were made, the evidence shows not only that defendant was under arrest, but also tends strongly to show that they may have been procured by means of intimidation. Confessions made under arrest, unless voluntary and after warning, may be used to the extent that the party made statement of facts and circumstances found to be true, and no further. Beyond the facts stated and as far as they furnish information, other portions of the confession would not be admissible evidence. *Davis* v. *State,* 8 Texas Ct. App. 510.

We are not prepared to say that, as far as shown by bill of exceptions No. 1, the court exceeded the rule in the admission of defendant's statements,— the defendant

having produced the money, stating that he got it out of witness' drawer, from which the other evidence showed it was taken.

Nor did the court err in refusing to permit defendant to prove his own declarations, and the declarations of a third party, as to the collection of a sum of money by defendant some months before. This third party should have been produced to prove the fact. In the manner sought, the evidence was clearly hearsay.

The court clearly erred in refusing to allow defendant's counsel to interrogate the jurors who in testing their qualifications had answered that "they hardly knew whether they had formed an opinion (as to defendant's guilt) such as would influence their verdict." Whilst it is true the court is made the judge, after proper examination, of the qualifications of jurors (Code Crim. Proc. art. 614), still this does not deprive a party of his right, where the juror's qualification is in doubt from his own answers, to have him further examined either by the court or under its direction. Code Crim. Proc. art. 636, subdivision 13. This right of examination exists in other as well as capital felonies. Code Crim. Proc. art. 650. Notwithstanding this error, however, inasmuch as the bill of exceptions shows that defendant did rid himself of the objectionable jurors by peremptory challenge, we cannot see how the ruling of the court, though erroneous, could in any manner have inured to his injury.

We see no error in the record of sufficient importance to call for a reversal of the judgment, and it is therefore affirmed.

*Affirmed.*